FILED

2007 Nov-30  PM 02:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN  DIVISION

| | | |
|---|---|---|
| **ROBERT R. TAYLOR, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-0958-S** |
| | ] | |
| **XM SATELLITE RADIO, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |
| | ] | |

## MEMORANDUM OPINION

Before the court is Defendant XM Satellite Radio Inc.'s ("XM") motion to dismiss this action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (doc. 9).  For the reasons stated below, the court concludes that no "case" or "controversy" exists and, therefore, it lacks subject matter jurisdiction over this action. Accordingly, the court will grant XM's motion to dismiss with prejudice.

## I.  BACKGROUND

XM provides satellite radio services.  All subscribers to XM's services execute a Customer Agreement that governs the terms of service and the parties' obligations.  The Customer Agreement does not guarantee continuous, uninterrupted service.  (*See* Def.'s Ex. A at §§ 1(e), 3, 10).  The Customer Agreement also provides that the subscriber and XM will attempt informal resolution of any dispute prior to invoking "a formal proceeding," which includes either arbitration or an action in "small claims court."  (*See id.* § 11).  Subscriber fees for XM radio services vary according to several factors.  The maximum subscriber fee for consumers is $12.95 per month, or approximately 43 cents per day.  Subscribers on a "family plan" pay only $6.99 per month, or 23 cents per day. Finally, commercial subscribers pay $27.95 per month, or approximately 92 cents per day.

Beginning midday on May 21, 2007, one of XM's operating satellites lost signal. Service was completely restored within twenty-four hours. As a result of the lost signal of one satellite, however, some XM customers experienced a loss or degradation of radio reception during the outage. On May 22, 2007 – the same day service was restored – XM offered a credit equal in value to two days' service to any subscriber who informed XM by telephone that his or her service was affected on May 21-22, 2007. XM offered consumer, family, and commercial subscribers credits of $1.00, $0.50, and $2.00, respectively – more than twice the value of each subscriber's potential loss. The offer was posted on XM's website and quickly picked up by the national wire services and newspapers. Beginning May 23, 2007, information about the offer, including the toll-free telephone number, was published in USA TODAY, Yahoo News, AOL, and numerous other print and online sources. (*See* Def.'s Exs. C-F). The offer remains posted on XM's website today.

On May 23, 2007, Plaintiffs, two Alabama residents who subscribe to XM radio services, filed this putative class action, asserting claims for breach of contract and unjust enrichment based solely on the service interruption of May 21-22, 2007. Plaintiffs complain that "XM . . . has not refunded any portion of Plaintiffs' bill." (Compl. ¶ 18). In the prayer for relief, they seek actual damages, restitution, and an injunction. (*Id.* at 8). XM moved to dismiss the complaint, partly on the ground that it has offered Plaintiffs more than they seek – a credit exceeding the value of their lost or degraded service.

## II.  STANDARD OF REVIEW

Typically, a court may not consider materials outside the pleadings in deciding a motion to dismiss. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). "[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1)," however, "the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6)."

-2-

*Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003).  Because the issue presented by a motion to dismiss under Rule 12(b)(1) is "the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the exercise of its power to hear the case." *Id.*   "If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts." *Arbaugh v. Yott Corp.*, 546 U.S. 500, 514 (2006) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (2000)).

The court disagrees with Plaintiffs' argument that XM's motion clearly implicates an essential element of a claim and, thus, that the court cannot weigh facts in resolving the current motion; if the court were to weigh the facts, it would likely conclude that the action was moot well before Plaintiffs' motion for class certification.  The court will not confront this issue, but, instead, in an abundance of caution, accepts as true all of Plaintiffs' allegations for purposes of this motion. The court nonetheless concludes that it lacks subject matter jurisdiction, as it will next discuss.

### III.  DISCUSSION

Article III of the U.S. Constitution confers upon this court jurisdiction over "cases" and "controversies."  U.S. Const. art. III, § 2.  The negative implication, of course, is that a district court lacks subject matter jurisdiction over an action that does not present an actual case or controversy. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980).  For a case to properly fall within Article III, both litigants must have a personal interest in the case at the beginning of litigation, and their interests must persist throughout the entirety of the litigation.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980).  Thus, "[a] case becomes moot when the dispute between the parties no longer rages, or when one of the parties loses his personal interest in the outcome of the suit." *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994).

A dispute "no longer rages" once a defendant offers to satisfy the plaintiff's entire demand. *Thomas v. Interland, Inc.*, 2003 WL 24065651, at *3 (N.D. Ga. Aug. 25, 2003). The action becomes moot upon the defendant's offer, even if the plaintiff does not accept the offer. *Id.* After an offer is made, a plaintiff who fails to recognize that no dispute remains about which to litigate "loses outright, under Fed. R. Civ. P. 12(b)(1)." *Id.* (quoting *Holstein*, 29 F.3d at 1147).

This mootness doctrine applies to class actions as well, but its application may sometimes differ. "[W]hen claims of the <u>named plaintiffs</u> become moot <u>before class certification</u>, dismissal of the action is required." *Labora v. MCI Telecomm. Corp.*, 1998 WL 1572719, at *2 (S.D. Fla. July 20, 1998) (quoting *Lusandi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992)) (emphasis added), *aff'd*, 204 F.3d 1121 (11th Cir. 1999). <u>After class certification</u>, a defendant may not render moot an entire class action simply by offering the <u>named plaintiffs</u> the entire relief requested. *White v. Humana Health Plan, Inc.*, 2007 WL 1297130, at *6 (N.D. Ill. May 2, 2007). "When the claims of <u>all</u> the class members are moot," however, "the action is moot." *Castillo v. Cameron County*, 238 F.3d 339, 343 n.1 (emphasis added) (quoting *Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985)); *see also* Charles Alan Wright, *et al.*, 13A *Federal Practice and Procedure* § 3533.9, at 401 (2d ed. 1984) (stating that "if the claim of the entire class is moot, the case is finished"). The application of the mootness doctrine becomes more complicated while a motion for class certification is pending. *See, e.g.*, *Humana Health Plan*, 2007 WL 1297130, at *6 (recognizing a policy against dismissing cases as moot where an offer to the named plaintiffs is made <u>after</u> a motion for class certification).

In this case, Plaintiffs argue that XM's offer came <u>after</u> they moved for class certification on July 5, 2007, and, therefore, it could not have rendered moot the entire action. Plaintiffs state that they did not know of XM's credit offer before July 30, 2007. On the other hand, the court notes that

Plaintiffs' attorney knew of the offer, at the latest, by July 6, 2007 – the date XM wrote him a letter explaining the offered credit and attempting to resolve the dispute.  The letter itself referred to an earlier conversation between counsel regarding that offer.  In addition, at least one online article dated June 4, 2007 specifically criticized Plaintiffs' counsel by name for filing the action in light of XM's offer.  *See* David Nieporent, *Offer Refunds, Get Sued Anyway:  XM Radio*, Overlawyered, June 4, 2007, http://www.overlawyered.com/2007/06/offer_refunds_get_sued_anyway.html (Def.'s Ex. F).  Thus, the court doubts that Plaintiffs' attorney did not know of the offer when he moved for class certification on July 6, 2007.  The court also finds it curious that Plaintiffs' counsel so zealously filed the complaint within thirty-six hours of his clients' alleged injuries, yet by his own evidence waited at least three weeks to inform his clients of XM's offer.  Nonetheless, for purposes of this motion, the court will accept as true Plaintiffs' statements that they had no knowledge of XM's credit offer before July 30, 2007.

In the end, however, the time at which the named Plaintiffs learned of XM's offer is irrelevant.  The Customer Agreement itself requires subscribers to contact XM – rather than rushing to the courthouse – whenever a dispute arises.  Had Plaintiffs done so the morning of their complaint, perhaps this whole case could have been avoided.  More importantly, putting aside Plaintiffs' apparent noncompliance with the Customer Agreement, Plaintiffs' receipt of XM's offer after moving for class certification is still irrelevant.  The class action exception to the mootness doctrine protects an important policy by preventing defendants from "picking off" the named plaintiffs and rendering moot entire class actions to avoid liability to remaining class members.  *See Roper v. Consure, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd sub nom. Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980).  This case does not present that danger.  Instead, in this case, XM has offered a credit of two times the maximum possible value of a subscriber's degraded service to all

subscribers – *i.e.*, the entire potential class.  Thus, XM's offer exceeds the entire putative class's actual damages as described in the complaint, and the court can afford no more relief than that already offered.  *See Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995) (holding that a case is moot if an event makes it impossible for the court to grant any effectual relief).

Plaintiffs cannot claim the benefit of the class action exception to the mootness doctrine under these circumstances; not only the named Plaintiffs' personal stakes evaporated with XM's offer, but every putative class member's stake also evaporated.  Thus, class certification is inconsequential because no XM subscriber has an interest in the litigation given XM's credit offer. For the same reason, dismissing this case does not implicate the interest in judicial economy and avoidance of serial lawsuits discussed in the non-controlling case upon which Plaintiffs rely.  (*See* Pls.' Br. 13 n.1) (citing *Humana Health Plan*, 2007 WL 1297130, at *7).

Relying on a case from the Court of Appeals for the Federal Circuit, Plaintiffs argue in opposition to XM's motion to dismiss that XM may have "offered," but did not "tender," the relief requested.  *See Rothe Dev. Corp. v. Dep't of Defense*, 413 F.3d 1327, 1331 (Fed. Cir. 2005).  None of the other cases cited by either party distinguishes between "offer" and "tender."  For instance, the Seventh Circuit Court of Appeals, in *Holstein*, refers to the defendant's "offer of restitution" – which is precisely what we have in this case.  29 F.3d at 1146-47 (emphasis added).  Likewise, the U.S. District Court for the Northern District of Georgia, in *Thomas*, acknowledged that "a plaintiff's claim becomes moot when a defendant offers the plaintiff all relief he could receive if his claim were fully litigated, even if the plaintiff does not accept such offer."  2003 WL 24065651, at *3 (emphasis added).  This court does not find Plaintiffs' conceived distinction between "offer" and "tender" material, but instead looks to whether XM has offered Plaintiffs and the putative class relief that

makes them whole.  As discussed above, XM has offered relief that actually puts each subscriber in a <u>better</u> financial position then he or she would have been absent the service degradation.

Plaintiffs next contend that XM's offer cannot render moot the class claims because (1) it was not made pursuant to Fed. R. Civ. P. 68, and (2) it is contingent upon a telephone call.  These arguments are unavailing.  None of the cases cited by either party requires the offer to be made under Fed. R. Civ. P. 68.  Despite Plaintiffs' contentions otherwise, in fact, several of these cases do not even indicate that the offers were made under Fed. R. Civ. P. 68.

Plaintiffs' second argument – that XM's offer is conditional because subscribers must telephone XM – is ludicrous.  XM claims it cannot identify which subscribers were affected and, therefore, requires affected subscribers to notify it prior to receiving the credit.  XM does not – and could not – require "proof" of service degradation.  Rather, the subscriber need only call the toll-free number and state that he or she was affected; then the credit will appear.  This is hardly as "conditional" as the Plaintiffs attempt to characterize it.  In an analogous case involving cable television service interruptions, one state court held that requiring affected subscribers to telephone the company to receive a rebate was "neither unreasonable or illogical."  *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 720 (Pa. Super. Ct. 1996).  If this case were to proceed as a class action and Plaintiffs were to prevail, the process then required for class members to claim damages would be far more tedious than a simple toll-free telephone call.  *See, e.g.*, *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 873-74 (11th Cir. 2003) (describing process for individuals to register to receive proceeds from settlement funds).

In addition, each class member would recover, at most, seventy percent of the value of twenty-four hours of degraded service – approximately only thirty percent of XM's offer – if Plaintiffs' counsel takes the normal minimum contingency fee.  Prolonging this litigation is not in

the best interests of the potential class members, but can only serve to unfairly fatten Plaintiffs' and their attorneys' pocketbooks – a fact tacitly admitted in their brief, in which Plaintiffs argue that the case is not moot because they "are eligible for enhanced awards for their service as class representatives."[1] Pls.' Br. 10.   That Plaintiffs have requested such damages, moreover, does not enable them to evade the mootness doctrine.  *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (recognizing that an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").

In addition to actual damages, Plaintiffs' prayer for relief seeks "restitution" and an "injunction."   Because this court can grant neither, these requests do not save the case from mootness.  *See Aquamar, S.A. v. Del Monte Fresh Produce, N.A.*, 179 F.3d 1279, 1287 (11th Cir. 1999) (recognizing that a case is moot when effectual relief is impossible because the parties lack a legally cognizable interest in the outcome of litigation).   Black's Law Dictionary defines "restitution" as either (1) "[c]ompensation for loss . . ." or (2) "[r]eturn or restoration of some specific thing to its rightful owner or status."  *Black's Law Dictionary* 1315 (8th ed. 2004).   If Plaintiffs use the term in the former sense, then they are simply asking for actual damages all over again, and XM has offered them more than the full restitution they seek.   If, on the other hand, Plaintiffs seek "restitution" under the alternate definition, they wish to receive the specific radio programming of which they were deprived on May 21-22, 2007.   Although certain top-secret government divisions may have a flux capacitor,[2] the federal judiciary does not; thus, the court is unable to return the lost XM radio programming to Plaintiffs.

---

[1] Had XM radio service been interrupted on a different day, perhaps subscribers would have heard Jean Chatzky's segment on "Being Happy With What You Have," which first aired May 21, 2007 on XM's Oprah & Friends channel, and lawsuits such as this one could be avoided.

[2] The "flux capacitor," according to Emmett "Doc" Brown in the *Back to the Future* film trilogy, is "what makes time travel possible."

Plaintiffs' request for injunctive relief suffers a similar fate. Are Plaintiffs seriously imploring this court to prohibit future interruptions of satellite radio service? Disregarding for a moment that Plaintiffs' Customer Agreements with XM contemplate service interruptions, such relief is inconceivable. Unless a satellite is in geostationary orbit directly above the great state of Alabama, this court may be unable to compel the satellite to perform continually with no interruption. Thus, despite Kenny Rogers' assertion otherwise,[3] satellites may in fact be able to outrun the long arm of the law. XM, on the other hand, cannot move so quickly to avoid this court's reach, and the court could enjoin its operations of the satellites regardless of their locations. This too, however, is implausible; neither XM nor this court has any control over the innumerable conditions that could cause service interruptions of satellite transmissions.

In sum, Plaintiffs seek in their complaint actual damages and restitution for "complete outages, and/or severely degraded service, for approximately twenty-four (24) hours." (Compl. ¶ 9). XM has offered them and every putative class member <u>more than twice</u> that amount. Therefore, Plaintiffs' claims are moot, and this court will grant XM's motion and dismiss this case.[4]

## IV. CONCLUSION

For the reasons stated above, the court concludes that no "case" or "controversy" exists as required for this court to exercise jurisdiction under Article III of the U.S. Constitution.

---

[3] In his 1980 country ballad "The Long Arm of the Law," Kenny Rogers reiterates again and again that "you can't out run the long arm of the law."

[4] Alternatively, the court would dismiss the case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Customer Agreement, which undisputedly governs the parties' relationship, does not obligate XM to provide continuous uninterrupted service and, in fact, expressly and unambiguously disclaims such service. Accordingly, Plaintiffs have not sufficiently pleaded a breach of contract claim. Because Plaintiffs have alleged the existence of an express contract governing their relationship with XM, their quasi-contractual claim for unjust enrichment is due to be dismissed under Alabama law. *See Vardaman v. Florence City Bd. of Educ.*, 544 So. 2d 962, 965 (Ala. 1989) ("It has long been recognized in Alabama that the existence of an express contract generally excludes an implied agreement relative to the same subject matter.").

Accordingly, the court will grant Defendant's motion to dismiss.  The court will enter a separate order consistent with this memorandum opinion.

DATED this 30th day of November, 2007.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE